**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Binder & Binder – The National Social Security Disability Advocates (NY), LLC, *et al.*, [1] | Case No. 14-23728 (RDD) |
| | (Joint Administration Requested) |
| Debtors. | |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) AFFORDING ADEQUATE PROTECTION; (V) SCHEDULING A FINAL HEARING; AND (VI) MODIFYING THE AUTOMATIC STAY [RE: D.I. 14][2]

Upon the motion, dated December 19, 2014 (the "DIP Financing Motion") of the above-captioned debtors and debtors-in-possession (collectively, "Debtors") for entry of an interim order (this "Interim Order") and a final order (the "Final Order") (1) authorizing Debtors to obtain interim postpetition financing and other extensions of credit from U.S. Bank National Association ("U.S. Bank") and the other entities and financial institutions that may from time to time become postpetition lenders under the DIP Loan Documents (as hereinafter defined)

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) Binder & Binder - The National Social Security Disability Advocates (NY), LLC (1450); (2) SSDI Holdings, Inc. (3038); (3) Binder & Binder - The National Social Security Disability Advocates LLC (8580); (4) The Rep for Vets LLC (6421); (5) National Veterans Disability Advocates LLC (dba The Rep for Vets LLC) (7468); (6) The Social Security Express Ltd. (4960); (7) Binder & Binder - The National Social Security Disability Advocates (AZ), LLC (5887); (8) Binder & Binder - The National Social Security Disability Advocates (CA), LLC (1456); (9) Binder & Binder - The National Social Security Disability Advocates (CO), LLC (0945); (10) Binder & Binder - The National Social Security Disability Advocates (CT), LLC (0206); (11) Binder & Binder - The National Social Security Disability Advocates (FL), LLC (1455); (12) Binder & Binder - The National Social Security Disability Advocates (GA), LLC (4768);    (13) Binder & Binder - The National Social Security Disability Advocates (IL), LLC (1457); (14) Binder & Binder - The National Social Security Disability Advocates (MD), LLC (3760); (15) Binder & Binder - The National Social Security Disability Advocates (MO), LLC (2108); (16) Binder & Binder - The National Social Security Disability Advocates (NJ), LLC (1454); (17) Binder & Binder - The National Social Security Disability Advocates (NC), LLC (1460); (18) Binder & Binder - The National Social Security Disability Advocates (OH), LLC (7827); (19) Binder & Binder - The National Social Security Disability Advocates (PA), LLC (1453); (20) Binder & Binder - The National Social Security Disability Advocates (TX), LLC (1458); (21) Binder & Binder - The National Social Security Disability Advocates (VA), LLC (7875); (22) Binder & Binder - The National Social Security Disability Advocates (WA), LLC (0225); (23) Binder & Binder - The National Social Security Disability Advocates (LA), LLC (8426); (24) Binder & Binder - The National Social Security Disability Advocates (MI), LLC (8762); and (25) Binder & Binder - The National Social Security Disability Advocates (DC), LLC (5265).

[2] Capitalized terms used in this Interim Order, unless defined herein, shall have the meanings given such terms in the DIP Loan Agreement (as hereinafter defined).

(collectively, together with their respective successors and assigns, the "DIP Lenders") and from

U.S. Bank in its capacity as administrative and collateral agent for the DIP Lenders and any letter

of credit issuer (in such capacity, the "DIP Agent"; DIP Agent, DIP Lenders, and any letter of

credit issuer are referred to herein collectively as the "DIP Secured Parties"); (2) granting

security interests and liens and according superpriority claim status in favor of DIP Agent (for

the benefit of the DIP Secured Parties) pursuant to section 364 of title 11 of the United States

Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"); (3) authorizing Debtors

to use cash collateral of Prepetition Secured Parties (as hereinafter defined) pursuant to section

363 of the Bankruptcy Code; (4) affording adequate protection to Prepetition Secured Parties

pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code; (5) scheduling and

approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001 and

9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and

S.D.N.Y Bankr. L.R. 4001-2; and (6) granting related relief, including, without limitation,

modification of the automatic stay pursuant to section 362 of the Bankruptcy Code.

This Court having reviewed the DIP Financing Motion, the Declaration of William A.

Brandt, Jr. in Support of First Day Applications and Motions, and all matters brought to the

Court's attention at the preliminary hearing, including the proffer of testimony and

representations thereat, which was held on December 22, 2014 pursuant to Bankruptcy Rules

4001(b)(2) and (c)(2) (the "Interim Hearing"); and the Debtors on December 23, 2014 having

provided the Court with the proposed DIP Loan Agreement (as defined below); and it appearing

that the relief requested in the DIP Financing Motion, to the extent granted by this Interim Order,

is in the best interests of Debtors, their estates, and their creditors, and after due deliberation and

consideration, the Court makes the following findings of fact and conclusions of law (to the

extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.    <u>Petition Date</u>.  On December 18, 2014 (the "<u>Petition Date</u>"), Binder & Binder - The National Social Security Disability Advocates LLC, a Delaware limited liability company ("<u>Binder</u>"), and the other Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (these "<u>Chapter 11 Cases</u>").  Debtors have retained possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    <u>Committee</u>.  No trustee, examiner, official committee of unsecured creditors or any other committee (each, a  "<u>Committee</u>") has been appointed in any of the Chapter 11 Cases.

C.    <u>Jurisdiction; Core Proceeding; Venue</u>.  The Court has jurisdiction over the Chapter 11 Cases, the parties, and Debtors' property pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for these Chapter 11 Cases and proceedings on the the DIP Financing Motion is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409.

D.    <u>Notice</u>.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001, and the notice provided by Debtors of the Interim Hearing and the relief requested in the Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court, and no other notice need be given.

E.    <u>Prepetition Loan Documents</u>.

(i)      Prior to the Petition Date, U.S. Bank and the other entities and financial institutions parties to the Prepetition Loan Agreement referenced below, as lenders (in such capacity, collectively and together with their successors and assigns, "Prepetition Lenders"), and U.S. Bank, in its capacities as letter of credit issuer (in such capacity, together with its successors and assigns, "Prepetition L/C Issuer"), and as administrative and collateral agent for Prepetition Lenders and Prepetition L/C Issuer (in such capacities, together with its successors and assigns, "Prepetition Agent"; Prepetition Lenders, Prepetition L/C Issuer, and Prepetition Agent are sometimes referred to herein collectively as, the "Prepetition Secured Parties"), made certain loans and other financial accommodations available to Binder pursuant to that certain Loan Agreement, dated as of August 27, 2010 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Agreement"), by and among Binder and the Prepetition Secured Parties.   Pursuant to the Prepetition Loan Agreement, the Prepetition Secured Parties agreed to provide Binder with, among other things, (a) a revolving credit facility in the maximum amount of $8,000,000 and (b) a term loan in the aggregate original principal amount of $29,000,000, which loans are evidenced by certain notes issued by Binder in favor of each Prepetition Lender (as amended, restated, and modified from time to time and together with any renewals and extensions thereof or exchanges or substitutions therefor, collectively, the "Prepetition Notes").

(ii)      Prior to the Petition Date, in connection with the Prepetition Loan Agreement:

(a)      SSDI Holdings, Inc. ("Holdco") entered into and executed in favor of the Prepetition Secured Parties that certain Guaranty dated as of August 27,

2010 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Holdco Guaranty"); and

(b)        Binder & Binder – The National Social Security Disability Advocates (CA), LLC, Binder & Binder The National Social Security Disability Advocates (CO), LLC, Binder & Binder – The National Social Security Disability Advocates (FL), LLC, Binder & Binder – The National Social Security Disability Advocates (GA), LLC, Binder & Binder – The National Social Security Disability Advocates (IL), LLC, Binder & Binder – The National Social Security Disability Advocates (NC), LLC, Binder & Binder – The National Social Security Disability Advocates (NJ), LLC, Binder & Binder – The National Social Security Disability Advocates (NY), LLC, Binder & Binder – The National Social Security Disability Advocates (PA), LLC, Binder & Binder – The National Social Security Disability Advocates (TX), LLC, Binder & Binder – The National Social Security Disability Advocates (WA), LLC, The Social Security Express Ltd., The Rep for Vets LLC, and National Veterans Disability Advocates LLC (collectively, the "Prepetition Subsidiary Guarantors"; Prepetition Subsidiary Guarantors and Holdco are sometimes referred to herein collectively, as "Prepetition Guarantors"), entered into and executed in favor of the Prepetition Secured Parties that certain Guaranty dated as of August 27, 2010 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Subsidiary Guaranty"; the Prepetition Holdco Guaranty and the Prepetition Subsidiary Guaranty are sometimes referred to herein collectively as, the "Prepetition Guaranties").

**Findings and Conclusions F. through I. below constitute representations, stipulations, acknowledgements and agreements of the Debtors on their own behalf but not on behalf of their estates except as expressly provided in paragraph 23 hereof and are subject in each case to paragraph 23 hereof.**

F.    <u>Prepetition Debt</u>.  Each Debtor represents, stipulates, acknowledges, and agrees that:

(i)    As of the Petition Date, Binder and the Prepetition Guarantors (collectively, the "<u>Prepetition Loan Parties</u>") were jointly and severally indebted and liable to the Prepetition Secured Parties under the Prepetition Loan Agreement, the Prepetition Notes, the Prepetition Guaranties, and any and all instruments, agreements, and documents related to or entered in connection with any of the foregoing (collectively with the Prepetition Loan Agreement, the Prepetition Notes, the Prepetition Guaranties, and the Prepetition Security Documents (as hereinafter defined), the "<u>Prepetition Loan Documents</u>") in the approximate aggregate principal amount of $23,048,233.00 (such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees), and other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtors in connection with the Prepetition Loan Documents is collectively referred to herein as, the "<u>Prepetition Debt</u>").

(ii)    The Prepetition Debt is (a) legal, valid, binding, and enforceable against each Prepetition Loan Party, jointly and severally; and (b) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

(iii)    Pursuant to the Prepetition Guaranties, Prepetition Guarantors, jointly and severally, unconditionally and fully guaranteed the full and prompt payment and performance of the indebtedness and obligations of Binder to the Prepetition Secured Parties under the Prepetition Loan Agreement and the Prepetition Notes.  Upon entry of this Interim Order, each Prepetition Guarantor hereby: (i) reaffirms, ratifies, and confirms that its unconditional guaranty remains in full force and effect notwithstanding, among other things, any financial accommodations extended by the Prepetition Secured Parties to Debtors pursuant to the terms of this Interim Order; (ii) denies and waives the existence of any defenses or right of setoff which may otherwise be available to it relating to such guaranty; and (iii) waives and releases any and all of its claims and causes of action which may exist against any of the Prepetition Secured Parties.

G.    <u>Prepetition Liens</u>. Each Debtor represents, stipulates, acknowledges, and agrees that:

(i)    As security for the payment of the Prepetition Debt, Prepetition Loan Parties granted to Prepetition Agent, for the benefit of the Prepetition Secured Parties, security interests in and liens upon all or substantially all of Prepetition Loan Parties' tangible and intangible personal property and assets, wherever located and whether then owned or thereafter arising or acquired, including, without limitation, all of Prepetition Loan Parties' accounts, accounts receivable, inventory, equipment, fixtures, general intangibles, chattel paper, contract rights, permits, tax refunds, insurance proceeds, documents, instruments, investment property, deposit accounts, books and records and other collateral, all as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, including, without limitation,

the all cash collateral, being referred to herein as, the "Prepetition Collateral" and such liens thereon shall be referred to as, the "Prepetition Liens"), pursuant to, among other things, (A) those certain Security Agreements each dated as of August 27, 2010 by Binder and each Prepetition Subsidiary Guarantor in favor of the Prepetition Agent, for the benefit of the Prepetition Secured Parties (collectively, as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Security Agreements"), (B) those certain Stock Pledge Agreement and Membership Interest Pledge Agreements each dated as of August 27, 2010, by each of Binder and Holdco in favor of the Prepetition Agent, for the benefit of the Prepetition Secured Parties (collectively, as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Pledge Agreements"), and (C) those certain Continuing Reimbursement Agreements for Standby Letter of Credit each dated as of August 27, 2010, between Prepetition L/C Issuer and each Prepetition Loan Party (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Reimbursement Agreements"; the Prepetition Security Agreements, the Prepetition Pledge Agreements, and the Prepetition Reimbursement Agreements are sometimes referred to herein collectively as, the "Prepetition Security Documents").

(ii)     The Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly and properly perfected security interests in and liens upon the Prepetition Collateral and, as of the Petition Date and without giving effect to this Interim Order, Debtors are not aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Liens" (as defined in the Prepetition Loan Agreement).

(iii)     The Prepetition Liens on the Prepetition Collateral were granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, for fair consideration and

reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

H.   <u>Cash Collateral</u>. Each Debtor represents, stipulates, acknowledges, and agrees that:

(i)   All cash, cash proceeds, and all other "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition Loan Parties wherever located and whether constituting original collateral, proceeds from advances or other loans, or proceeds of the Prepetition Collateral, are encumbered by the Prepetition Liens and, as such, constitute "cash collateral" of the Prepetition Secured Parties (as such term is defined in section 363(a) of the Bankruptcy Code).

(ii)   For the avoidance of doubt, (a) pursuant to the Prepetition Loan Documents and section 552(b) of the Bankruptcy Code, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, has a valid, duly perfected, first-priority lien upon and security interest in and to all of the cash of Prepetition Loan Parties, whether obtained on, prior to, or after the Petition Date, and (b) these funds, along with the proceeds of the Prepetition Collateral (whether such proceeds were obtained on, prior to or after the Petition Date) (which liens and security interests constitute and are included in the term "Prepetition Liens" as used herein) constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy.

I.   <u>Junior Indebtedness; Subordination Agreement</u>.

(i)   Pursuant to that certain Investment Agreement dated as of August 27, 2010, by and among Binder, Holdco and certain other Debtors, as guarantors, and Stellus Capital Investment Corporation, as successor in interest to D.E. Shaw Direct Capital Portfolios, L.L.C.

("Stellus"), as lender, Stellus made an unsecured loan to Debtors in the original principal amount of $13,000,000, which is evidenced by certain senior subordinated notes.

(ii)    Pursuant to that certain Subordination Agreement dated as of August 27, 2010 (the "Subordination Agreement"), between the Prepetition Agent and Stellus, Stellus subordinated, among other things, all of the Prepetition Debt to the extent and manner detailed in the Subordination Agreement.

J.    Collateral.  Each Debtor represents, stipulates, acknowledges and agrees that as of the Petition Date, the value of the Prepetition Collateral exceeds the amount of the Prepetition Debt at such time.

K.    Financing Need.  An immediate and ongoing need exists for Debtors to obtain financing of the type sought herein, to continue the operation of their businesses as debtors-in-possession under chapter 11 of the Bankruptcy Code, and to reassure Debtors' vendors, customers, employees, and other constituents of their continued viability until such time as the Final Hearing (as hereinafter defined) may be conducted.  Despite diligent efforts, Debtors have been unable to obtain financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code.  Debtors are also unable to obtain financing in the form of a credit facility secured by liens that are junior to existing liens on property of their estates pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code.  Within the timeframe required by their need to avoid immediate and irreparable harm, Debtors can obtain financing in the amounts required by them only by the grant of liens, including priming liens pursuant to section 364(d) of the Bankruptcy Code, as

hereinafter described, but Debtors have been unable to procure any such financing from any source other than DIP Agent and the DIP Lenders.

     L.    <u>DIP Facility</u>.

     (i)    Debtors have requested that DIP Agent and DIP Lenders establish a secured lending facility in favor of Debtors (the "<u>DIP Facility</u>") pursuant to which Debtors may obtain revolving credit loans (the "<u>DIP Loans</u>") in a maximum principal amount at any time outstanding not to exceed $26,000,000, less the Carve Out (as hereinafter defined); <u>provided</u> that the proceeds of such DIP Facility shall be used by Debtors in accordance with this Interim Order and the DIP Loan Documents and solely for the purposes and amounts set forth in the Budget.

     (ii)    DIP Secured Parties are willing to establish the DIP Facility, upon the terms and conditions set forth herein and in that certain Post-Petition Revolving Credit and Security Agreement in substantially the form annexed hereto as **<u>Exhibit A</u>** (together with all schedules, exhibits and annexes thereto, and as at any time amended, restated, supplemented or otherwise modified, the "<u>DIP Loan Agreement</u>" and, together with other agreements, instruments, and other documents executed or delivered in connection with the DIP Loan Agreement, as each may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP Loan Documents</u>").

     M.    <u>DIP Collateral</u>.  A condition to the willingness of DIP Secured Parties to establish the DIP Facility is that, as security for the prompt payment of all DIP Loans, all interest, fees, costs, expenses (including attorneys' fees), and other charges at any time payable by Debtors under the DIP Loan Documents, DIP Agent, for the benefit of the DIP Secured Parties, receive a security interest in and lien upon all of each Debtor's assets (real and personal), whether in existence on or before Petition Date or created, acquired, or arising on or after the Petition Date

and wherever located, including, without limitation, all of each Debtor's cash, accounts, accounts receivable, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, and books and records relating to any assets of a Debtor and all proceeds (including insurance proceeds) and products of the foregoing and all accessions to, substitutions, and replacements for, and rents and profits of, each of the foregoing, all as more fully described in the DIP Loan Agreement (all such real and personal property, and the proceeds thereof, being collectively hereinafter referred to as, the "DIP Collateral"), and, upon entry of a final order with respect to the DIP Financing Motion, any Avoidance Actions (as hereinafter defined).  DIP Secured Parties require that the liens and security interests in favor of DIP Agent must be first-priority security interests in and liens upon all of the DIP Collateral as provided herein.

N.    Adequate Protection. As a result of (i) the granting of priming liens and security interests herein pursuant to section 364(d) of the Bankruptcy Code; (ii) the use of Cash Collateral (as hereinafter defined) pursuant to section 363(c) of the Bankruptcy Code; (iii) the use, sale, or lease of certain collateral (other than Cash Collateral); (iv) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; and (v) the establishment of the Carve-Out, Prepetition Agent, for the benefit of Prepetition Secured Parties, is entitled to adequate protection for and to the extent of any diminution in value of its interest in the Prepetition Collateral. Prepetition Secured Parties have consented to the terms and conditions in this Interim Order.

O.    Good Cause.  Based upon the record presented at the Interim Hearing, it appears that good cause has been shown for the entry of this Interim Order.  The entry of this Interim Order will minimize disruption of Debtors' businesses and operations and will preserve the assets of Debtors' estates for the benefit of their creditors, and is in the best interests of Debtors, their

creditors, and their respective estates.  This Interim Order shall control if there is a discrepancy between the terms of the DIP Loan Documents and this Interim Order.  he terms of the proposed financing, as modified by this Interim Order, appear fair and reasonable, reflect Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

V.     <u>Good Faith</u>.  Based upon the record presented at the Interim Hearing, the DIP Loan Documents have been negotiated in good faith and at arm's length among Debtors and DIP Secured Parties.  Therefore, all extensions of credit to Debtors pursuant to the DIP Loan Documents, as modified by this Interim Order shall be deemed to have been made by DIP Secured Parties in good faith within the meaning of section 364(e) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, **AS FOLLOWS:**

1.     **Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby overruled.  This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  The term of this Interim Order and the DIP Loan Documents authorized hereunder shall expire, and (except as otherwise provided in a Final Order) the DIP Loans made pursuant to the DIP Loan Agreement and this Interim Order shall mature and, together with all interest thereon and the other Postpetition Debt (as hereinafter defined), become due and payable (unless such DIP Loans and other Postpetition Debt become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on January 30, 2015.

2.      **Good Cause.**   The ability of Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the estates of Debtors and their creditors, so that Debtors can continue to operate their businesses in the ordinary course.   Debtors' estates will be immediately and irreparably harmed if this Interim Order is not promptly entered.   Good cause has, therefore, been shown for the interim relief sought in the DIP Financing Motion.

3.      **Good Faith.**   Based upon the record presented at the Interim Hearing, the DIP Loan Documents and this Interim Order have been negotiated in good faith and at arm's-length among Debtors and DIP Secured Parties.   Any DIP Loans and/or other financial accommodations made to Debtors by DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents shall be deemed to have been extended by DIP Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and DIP Secured Parties shall be entitled to all protections afforded thereunder.

4.      **Authorization of Interim Borrowing.**   Debtors' execution of the DIP Loan Documents, to the extent executed prior to entry of this Interim Order, is hereby ratified and affirmed.   Upon entry of this Interim Order, Debtors are immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the DIP Loans and other extensions of credit (such DIP Loans and other extensions of credit collectively being referred to herein, as "DIP Credit Extensions") pursuant to the DIP Loan Documents and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, costs, expenses (including attorneys' fees) and other obligations provided for under the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof; provided, however, that, pending the final hearing on the DIP Financing Motion (the "Final Hearing"), Debtors may obtain DIP Credit Extensions under the DIP Loan

Documents and the Interim Order _only_ to the extent necessary to avoid immediate and irreparable harm to Debtors, which, for purposes hereof, shall mean DIP Credit Extensions used (and in each case, only to the extent contemplated by and included in the Budget) (i) to pay all interest and reasonable fees, costs, and expenses (including reasonable attorneys' fees) due and amounts owing by Debtors to DIP Secured Parties under the DIP Loan Documents (provided, that these shall not include any prepayment premium, penalty or make-whole payment under the Prepetition Loan Agreement or Prepetition Security Documents, if any), (ii) for purposes specified in the DIP Loan Agreement, including without limitation, to fund operating expenses and other general working capital purposes in accordance with the Budget, (iii) to pay the Prepetition Debt pursuant to this Interim Order and the DIP Loan Agreement, and (iv) for the purposes specified in paragraph 11 hereof.  No DIP Secured Party shall have any obligation or responsibility to monitor Debtors' use of the DIP Loans and may rely upon Debtors' representations that the amount of DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  All DIP Credit Extensions and other Postpetition Debt shall be due and payable, and shall be paid, by Debtors in accordance with the requirements of this Interim Order and the DIP Loan Documents.  Debtors are hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Interim Order, without the necessity of Debtors or any DIP Secured Party filing any further application with the Court for approval or payment thereof.

5.      **Authority to Execute and Deliver Necessary Documents.**  Upon execution and delivery thereof, the DIP Loan Documents shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor in accordance with their terms.  In furtherance of the

provisions of paragraph 4 of this Interim Order, each Debtor is authorized and directed to do and

perform all acts, to make, execute, and deliver all instruments and documents (including, without

limitation, the execution of security agreements, pledge agreements, mortgages, deeds of trust,

deeds to secure debt, financing statements, and intellectual property filings), to cause each of its

related entities that are not a Debtor to execute and deliver guaranties and security agreements to

the extent required by the DIP Loan Documents, and to pay all filing and recording fees, in each

case as may be necessary or, in the opinion of DIP Agent, desirable to give effect to any of the

terms and conditions of the DIP Loan Documents, to validate the perfection of the DIP Liens (as

hereinafter defined), or as otherwise required or contemplated by the DIP Loan Documents.

6. **Amendments.** Debtors and DIP Secured Parties are hereby authorized to

implement, in accordance with the terms of the DIP Loan Documents, any amendments to and

modifications of any of the DIP Loan Documents without further order of the Court on the

following conditions: (a) the amendment or modification must not constitute a material change to

the terms of the DIP Loan Documents, (b) copies of the amendment or modification must be

served upon counsel for any Committee, the U.S. Trustee, and other interested parties that have,

prior to entry into such amendment by Debtors and DIP Secured Parties, specifically made a

written request for such notice to counsel for DIP Agent, and (c) notice of the amendment must

be filed with the Court. Any amendment or modification that constitutes a material change, to be

effective, must be approved by the Court. For purposes of this paragraph, a "material change"

shall include, without limitation, a change that operates to shorten the maturity of the DIP

Facility, increase the aggregate amount of the commitments under the DIP Facility, increase the

rate of interest other than as currently provided in or contemplated by the DIP Loan Documents,

add specific Events of Default or enlarge the nature and extent of default remedies available to DIP Secured Parties following an Event of Default).

7.    **Reimbursement of Expenses.**  All actual, reasonable costs and expenses incurred by DIP Secured Parties in connection with the negotiation and drafting of any amendments to the DIP Loan Documents, the preservation, perfection, protection, and enforcement of any DIP Secured Party's rights hereunder or under the DIP Loan Documents, or in the collection of the Postpetition Debt, including, without limitation, all filing and recording fees or taxes and fees and expenses of attorneys, accountants, appraisers, and other professionals incurred by DIP Secured Parties in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the Postpetition Debt and shall be paid by Debtors (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the DIP Loan Documents and this Interim Order.

8.    **DIP Liens.**  All DIP Credit Extensions, together with all interest, fees, expenses (including attorneys' fees) and other charges, at any time or times payable by Debtors to DIP Agent or any other DIP Secured Party in connection therewith or otherwise pursuant to the DIP Loan Documents (all such DIP Credit Extensions, interest, fees, expenses (including attorneys' fees) and other charges, including any "Obligations," as such term is defined in the DIP Loan Agreement, are collectively referred to herein as, the "Postpetition Debt") shall be, and hereby are, secured by security interests and liens in favor of DIP Agent, for the benefit of DIP Secured Parties, with respect to all of the DIP Collateral, as follows:

(a)    pursuant to section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens or to valid and

unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by section 546(b) of the Bankruptcy Code;

(b)    pursuant to section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by section 546(b) of the Bankruptcy Code (but excluding any pre-petition or post-petition liens in favor of any Prepetition Secured Party or any DIP Secured Party, and the Adequate Protection Liens (as hereinafter defined) (all such liens being referred to herein as, the "Primed Liens")); and

(c)    pursuant to section 364(d)(1) of the Bankruptcy Code, perfected first priority, senior priming security interests in and liens upon all Collateral that is at any time subject to the Primed Liens, all of which Primed Liens shall be primed by and subject and subordinate to the security interests and liens granted to DIP Agent, for the benefit of DIP Secured Parties, pursuant to the DIP Loan Documents and this Interim Order.

All of the security interests and liens referred to above and those granted and conveyed pursuant to the DIP Loan Documents are referred to herein as, the "DIP Liens."  Unless granted in the Final Order, the DIP Liens shall not attach to any claims pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or the proceeds thereof ("Avoidance Actions").

9.    **Superpriority Claim.**

(a)       Upon entry of this Interim Order, DIP Agent, for the benefit of DIP Secured Parties, shall be deemed to have an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code for all of the Postpetition Debt, having supreme priority over all other administrative expenses in the Chapter 11 Cases of the kind specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (effective as to the Roll Up Debt defined below) if approved by the Final Order, 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise.  The Superpriority Claim shall be subject in all events to the Carve-Out. Unless granted in the Final Order, the Superpriority Claim shall not be paid from Avoidance Actions.

(b)       No lien or security interest granted to any DIP Secured Party hereunder, including the DIP Liens, shall (i) be subject to any prepetition or postpetition lien or security interest that is avoided and preserved for the benefit of Debtors' estates under section 551 of the Bankruptcy Code, or (ii) hereafter be subordinated to or made *pari passu* with any other lien or security interest under section 364(d) of the Bankruptcy Code.

(c)       The DIP Liens, the Superpriority Claim, the Adequate Protection Liens, the Superpriority Adequate Protection Claim (as hereinafter defined), and other rights and remedies granted to DIP Agent, the other DIP Secured Parties, the Prepetition Agent or the other Prepetition Secured Parties (as applicable) under this Interim Order shall continue in this and in any superceding case or cases under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided in this Interim Order until (i) with respect to DIP Agent and the other Secured Parties, all the Postpetition Debt has been indefeasibly satisfied in full in

cash and the commitment is terminated in accordance with the terms of the DIP Loan Agreement; and (ii) with respect to the Prepetition Secured Parties, the indefeasible payment in full in cash of all the Prepetition Debt.

10.    **Joint and Several Liability; Repayment.**  Debtors shall be jointly and severally liable to repay the Postpetition Debt in accordance with the DIP Loan Documents.  The Postpetition Debt shall be due and payable, and shall be paid, as and when provided in this Interim Order and the DIP Loan Documents, without any right of rescission, setoff, counterclaim, or defense for any reason, unless and to the extent expressly otherwise agreed to in writing by DIP Agent.  In no event shall Debtors be authorized to offset or recoup any amounts owed, or alleged to be owed, by any DIP Secured Party or any Prepetition Secured Party to Debtors or any of their subsidiaries or affiliates against any of the Postpetition Debt unless and to the extent without DIP Agent's prior written consent.  Without limiting Debtors' joint and several liability for the Postpetition Debt, Debtors shall use commercially reasonable efforts to ensure that Debtors receiving the benefit of DIP Credit Extensions shall repay their share thereof on a dollar-for-dollar basis.  To the extent that any Postpetition Debt incurred for the benefit of one Debtor (the "Benefitted Debtor") is repaid with Cash Collateral constituting proceeds of another Debtor's Collateral (the "Repaying Debtor"), such Repaying Debtor shall have a claim under section 364(c)(1) of the Bankruptcy Code against the Benefited Debtor in the amount of such repayment, but such claim shall in all events be junior to the Superpriority Claim and the Superpriority Adequate Protection Claim.

11.    **Permitted Uses of Loan Proceeds and Cash Collateral.**

(a)    Debtors shall be authorized to use the proceeds (including, without limitation, cash, accounts, negotiable instruments and any other property comprising "cash collateral"

within the meaning of 11 U.S.C. § 363(a)) of any portion of the DIP Collateral (all such proceeds, whether arising or collected prior to or after the Petition Date (including all cash on hand), being collectively referred to herein as, "Cash Collateral") only for (i) funding general working capital purposes and operating expenses in accordance with the Budget and the DIP Loan Agreement, (ii) application to the Postpetition Debt or the Prepetition Debt in accordance with this Interim Order and the DIP Loan Agreement, and, (iii) upon the sooner to occur of the maturity date of the DIP Facility or the occurrence of an Event of Default (as defined in the DIP Loan Agreement), for application to the Postpetition Debt or the Prepetition Debt as elected by the DIP Agent in its sole discretion.  Notwithstanding the foregoing, all Collateral (including Cash Collateral) shall be subject to the Carve-Out.

(b)     Except as otherwise set forth in the last sentence of subparagraph (a) of this paragraph 11, from and after the date of entry of this Interim Order until the indefeasible payment in full in cash of the Postpetition Debt, all proceeds of the DIP Collateral shall be remitted to one or more existing deposit accounts maintained by the Debtors with Capital One, N.A. ("Capital One") prior to the Petition Date (the "CONA Accounts").  In no event shall Debtors maintain any cash or other funds in any deposit account or securities or investment account other than the CONA Accounts.  Provided (i) no Event of Default has occurred hereunder, and (ii) Debtors comply with all the provisions of this Interim Order and the DIP Loan Documents, including, without limitation, Section 2.7 of the DIP Loan Agreement, Debtors may access the amounts in the CONA Accounts solely to the extent necessary to pay the items set forth in the Budget and authorized in this Interim Order and the DIP Loan Documents.  All monies collected by Debtors shall be held in trust for the exclusive benefit of the Prepetition Secured Parties whether or not such monies are actually remitted to the CONA Accounts. Prior

to the remittance to DIP Agent of any proceeds of the DIP Collateral required to be remitted to

DIP Agent by this Interim Order, Debtors shall be deemed to hold such proceeds in trust for the

benefit of DIP Secured Parties.

     12.     **Fees and Expenses of Professional Persons.**

     (a)     Debtors are authorized, for so long as no Carve-Out Event has occurred and is

continuing, to use proceeds of the DIP Loans or the Collateral (except for the Carve-Out) solely

for purposes authorized by this Interim Order and by the DIP Loan Agreement, including to pay

such compensation and expense reimbursement (collectively, the "Professional Fees and

Expenses") in the specific line item amounts set forth in the Budget, of (i) professionals

(including, without limitation, attorneys, accountants, appraisers, consultants and investment

bankers) retained by Debtors with Court approval (the "Debtor Professionals"); (ii) professionals

(including, without limitation, attorneys, accountants, appraisers, consultants and investment

bankers) retained by any Committee with Court approval (the "Committee Professionals";

together with Debtor Professionals, "Professional Persons"), and (iii) members of a Committee,

in each case only to the extent that such compensation and expense reimbursement is authorized

to be paid on an interim basis pursuant to the Interim Professional Compensation Order (defined

below) or approved by other Court order and, with respect to members of a Committee,

otherwise comply with Section 503(b)(3)(F) of the Bankruptcy Code.  In accordance with any

procedures set forth in any Interim Professional Compensation Order, all Professional Persons

shall submit to Debtors on or before the last calendar day of each month, with copies

concurrently sent to counsel for DIP Agent, summary statements for compensation for services

rendered and reimbursement of expenses incurred by them during the preceding month.

(b)      Debtors are directed, for so long as no Carve-Out Event has occurred and is continuing, to deposit, when provided by the Budget, into an escrow account (the "Professional Expense Escrow") maintained by counsel for Debtors, the specific line item amounts set forth in the Budget for Professional Fees and Expenses, with such amounts to remain in escrow pending payment to the Professional Persons in accordance with an order of the Court approving procedures for interim compensation of professionals (the "Interim Professional Compensation Order") or other order of the Court allowing and/or authorizing to be paid such Professional Fees and Expenses. Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the Professional Expense Escrow shall not be subject to the control of the DIP Agent.  So long as the DIP Agent has not delivered a notice of Termination Date, the Debtors shall be authorized to fund the Professional Expense Escrow in accordance with the Budget and the DIP Loan Documents.  Except as otherwise set forth in subparagraph (e) of this paragraph 12, Debtors' counsel shall be authorized to remit payment from the Professional Expense Escrow to Professional Persons from time to time (whether or not a notice of Termination Date has been delivered) pursuant to the Interim Professional Compensation Order, without further Order of the Court.

(c)      No DIP Secured Party shall have any duty to ensure that Debtors discharge any of their obligations under subparagraphs (a) and (b) of this paragraph 12.  Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, (i) the DIP Liens and Superpriority Claim conferred upon DIP Agent, for the benefit of DIP Secured Parties, and (ii) all liens in favor of Prepetition Agent (whether Adequate Protection Lien or liens that were granted prior to the Petition Date), shall be subject and subordinate to the rights of Professional Persons with respect to the Professional Expense Escrow.  Accordingly, neither Debtors nor any

of their creditors shall have any claim to or interest in the escrowed Professional Fees and Expenses, provided, however, that to the extent any Professional Fees and Expenses or other amounts that are escrowed subsequently become disallowed or ordered to be disgorged by final order of the Court, or remain in escrow following full payment of all allowed Professional Fees and Expenses (the "Excess Escrow Funds"), such Excess Escrow Funds shall be paid over and delivered to (1) the DIP Agent (for the pro rata benefit of the DIP Secured Parties) for application to any Postpetition Debt and Prepetition Debt until indefeasibly paid in full and the DIP Loan Agreement is terminated, and (2) thereafter to Debtors.  Any deposits made to the Professional Expense Escrow pursuant to the foregoing authority during the pendency of the Chapter 11 Cases shall not reduce the Carve-Out.

(d)      Nothing in this Interim Order shall preclude any DIP Secured Party or any Prepetition Secured Party from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

(e)      Notwithstanding anything to the contrary in this Interim Order, if Debtors fail to pay to the DIP Agent as contemplated by Section 2.7 of the DIP Loan Agreement on or prior to the date such payment is due (each, a "Missed Payment"), (i) Debtors shall not pay any further amounts into the Professional Expense Escrow until such Missed Payment has been cured or waived in writing by the DIP Agent, and (ii) any and all amounts paid into the Professional Expense Escrow within the 30 calendar day period prior to the occurrence of such Event of Default shall be delivered to Debtors and, immediately upon receipt thereof, Debtors shall pay to the DIP Agent such amounts received and the amounts not otherwise paid in the Professional Expense Escrow as a result of this subparagraph (e), provided if the amounts paid to the DIP

Agent pursuant to subparagraph (e) equal the amount of the Missed Payment, the Event of Default arising from Debtors' failure to timely pay shall be deemed cured.

13.    **Carve-Out.**

(a)    Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, the DIP Liens, the Superpriority Claim, the Superpriority Adequate Protection Claim, and all liens in favor of the Prepetition Agent (whether granted prior to the Petition Date or pursuant to this Interim Order (*i.e.*, the Adequate Protection Liens)), shall be subject and subordinate to the payment, after a Carve-Out Event, of the following (to the extent that there are not sufficient, unencumbered, assets in Debtors' respective estates to pay such amounts or the Professional Expense Escrow or unapplied retainers of such Professional Persons): (i) Professional Fees and Expenses of Professional Persons, in an aggregate amount up to, but not to exceed $25,000, which, subject to entry of a final order with respect to the DIP Financing Motion, may in addition to payment of Professional Fees and Expenses of Professional Persons be applied towards fees and expenses of a chapter 11 or chapter 7 trustee which are approved by the Court; (ii) fees required to be paid to the Clerk of the Court; and (iii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i), (ii) and (iii) are collectively referred to herein as, the "Carve-Out"); provided further, however, that no proceeds of DIP Loans, no Collateral (including Cash Collateral), no funds on deposit in the Professional Expense Escrow, and no amounts received pursuant to the Carve-Out shall be used to pay Professional Fees and Expenses of any Professional Person or any other costs incurred in in (1) commencing or continuing any claims, causes of actions or contested matters against any DIP Secured Party or any Prepetition Secured Party, including, without limitation, discovery proceedings subsequent to the commencement of

any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by any DIP Secured Party or any Prepetition Secured Party of their rights or remedies under this Interim Order, any of the DIP Loan Documents, or any of the Prepetition Loan Documents; (3) challenging the Adequate Protection Liens, the Superpriority Adequate Protection Claim, the DIP Liens, or the Superpriority Claim or any liens or claims of any Prepetition Secured Party; or (4) any other purpose prohibited by this Interim Order or the DIP Loan Documents; provided, however, that any Committee professionals shall be entitled to incur and be paid, in accordance with the Budget, an amount not to exceed $25,000 in connection with the investigation under subparagraph (b) of paragraph 22.  The term "Carve-Out Event" shall mean the soonest to occur of: (i) the last day of the Term (as defined in the DIP Loan Agreement), (ii) the Revolving Facility Maturity Date (as defined in the DIP Loan Agreement), (iii) written notice to Debtors of an a Event of Default under the DIP Loan Agreement (whether or not the DIP Facility (or any commitment thereunder) is terminated as a consequence thereof) unless such Event of Default is waived in writing in accordance with the DIP Loan Agreement, (iv) the filing of an adversary proceeding by any party in interest against DIP Agent, any other DIP Secured Party, Prepetition Agent, any other Prepetition Secured Party or any of their respective interests at any time for any reason, and (v) any violation of this Interim Order.

(b)      After a Carve-Out Event, DIP Agent may, in its sole discretion at any time and without being deemed to have waived any Event of Default or to have reinstated the DIP Facility (or any commitments thereunder), satisfy all or any portion of the Carve-Out by funding one or more DIP Loans pursuant to the DIP Loan Agreement or by paying any Court-approved Professional Fees and Expenses that are covered by the Carve-Out, including by funding the Professional Expense Escrow in the amount of the Carve-Out, and, in such event, such DIP

Loans shall be entitled to all of the benefits and security of the DIP Loan Documents and this
Interim Order to the extent of any such DIP Loans used to pay any such Professional Fees and
Expenses.

(c)       DIP Agent shall have the right to establish and readjust from time to time, in its
sole discretion, reserves against the amount available to be advanced to Debtors under the DIP
Loan Agreement, including without limitation, reserves with respect to the Carve-Out and
Professional Fees and Expenses, as detailed in the DIP Loan Agreement.

14.       **Preservation of Rights Granted Under This Interim Order.**

(a)       There shall not be entered in these Chapter 11 Cases or in any successor case any
order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtors (or any
trustee or examiner) that is (i) secured by a security, mortgage, or collateral interest or lien on all
or any part of the DIP Collateral that is equal or senior to the DIP Liens or (ii) entitled to priority
administrative status that is equal or senior to the Superpriority Claim granted herein to DIP
Agent, for the benefit of the DIP Secured Parties; provided, however, that nothing herein shall
prevent the entry of an order that specifically provides that, as a condition to the granting of the
benefits of clauses (i) or (ii) above, all of the Prepetition Debt and all of the Postpetition Debt
must be indefeasibly paid in full, in cash from the proceeds of such credit or indebtedness.

(b)       If any of these Chapter 11 Cases is dismissed, converted, or substantively
consolidated, then neither the entry of this Interim Order nor the dismissal, conversion, or
substantive consolidation of any such Chapter 11 Case shall affect the rights of any DIP Secured
Party under the DIP Loan Documents or this Interim Order, and all of the respective rights and
remedies thereunder of DIP Secured Parties shall remain in full force and effect as if none of
these Chapter 11 Cases had been dismissed, converted, or substantively consolidated.  Debtors

shall not seek, and it shall constitute an Event of Default if any Debtor seeks, or if there is entered, any order dismissing any of these Chapter 11 Cases.  If an order dismissing any of these Chapter 11 Cases is at any time entered (under sections 305 or 1112 of the Bankruptcy Code or otherwise), such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the liens, security interests, and superpriority administrative expense status granted to DIP Agent, any other DIP Secured Party, Prepetition Agent or any other Prepetition Secured Party hereunder and in the DIP Loan Documents, as the case may be, shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Interim Order until, as to DIP Secured Parties, all Postpetition Debt shall have been paid in full in cash, all letters of credit shall have been cancelled or cash collateralized to the extent required under the DIP Loan Agreement and the commitment shall have been terminated in accordance with the DIP Loan Agreement, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the liens, security interests, and superpriority administrative expense status of DIP Secured Parties and Prepetition Secured Parties, as the case may be.

(c)     The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting any of the Chapter 11 Cases from chapter 11 to chapter 7.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the Postpetition Debt from those set forth in the DIP Loan Documents.

(d)     The Postpetition Debt shall not be discharged by the entry of any order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, Debtors have waived such discharge.

15.   **Adequate Protection.**   As adequate protection for and to the extent of any diminution in value of their respective interests in the Prepetition Collateral resulting from (a) the granting of priming liens and security interests herein pursuant to section 364(d) of the Bankruptcy Code; (b) the use of Cash Collateral pursuant to section 363(c) of the Bankruptcy Code; (c) the use, sale or lease of their respective collateral (other than Cash Collateral); (d) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; and (e) the establishment of the Carve-Out:

(i)   Effective upon entry of this Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or otherwise, Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted valid, duly perfected and non-avoidable replacement security interests and liens in and to all of the Prepetition Collateral as partial adequate protection.  Such liens are referred to herein, as the "Adequate Protection Liens" and shall not attach for purposes of this Interim Order to Avoidance Actions.  Debtors shall not seek in any way to alter or cause to be subordinated the Adequate Protection Lien provided to Prepetition Agent by this Interim Order.

(ii)   For so long as no "Event of Default" under (and as defined in) the DIP Loan Agreement shall have occurred and be continuing, Debtors are authorized and directed to pay, and Prepetition Secured Parties shall be entitled to receive, upon entry of this Interim Order, payment of all of the Prepetition Debt as contemplated in the DIP Loan Agreement.

(iii)   Upon entry of this Interim Order, Prepetition Agent, for the benefit of Prepetition Secured Parties, shall be deemed to have an allowed superpriority adequate protection claim to the extent the Adequate Protection Liens are not adequate to protect Prepetition Secured Parties against the diminution in value of the Prepetition Collateral (the "Superpriority Adequate

Protection Claim"). The Superpriority Adequate Protection Claim shall have priority over all other administrative expenses in the Chapter 11 Cases of the kind specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of final order with respect to the DIP Financing Motion), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise, subject to the Superpriority Claim granted to the DIP Secured Parties in this Interim Order.

(iv)   Nothing herein shall be deemed to be a waiver by any Prepetition Secured Party of its rights to request additional or further protection of its interest in any property of Debtors. Prepetition Secured Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale, or other disposition of any of the DIP Collateral, to the extent that the protection afforded by this Interim Order to Prepetition Agent's pre-petition interests in any Collateral proves to be inadequate.

(vi)   For the avoidance of doubt, (a) the DIP Liens and Superpriority Claim shall be senior and prior to the Adequate Protection Liens and the Superpriority Adequate Protection Claim and (b) the DIP Liens, Superpriority Claim, the Adequate Protection Liens and the Superpriority Adequate Protection Claim shall be senior and prior to and all other liens and claims, other than the Professional Fee Escrow, the Carve-Out and Permitted Liens.

16.    **Controlling Provisions Regarding Roll Up Debt.**

(i) **Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents**, (1) this Court's approval of that portion of the DIP Facility and DIP Advances attributable to payment of any Prepetition Debt (the "Roll Up Debt") is without prejudice and

subject to the right of any interested party (excluding Debtors) to challenge whether the Prepetition Debt was fully secured as of the Petition Date (provided, however, that any such challenge must be made, or any such right must be exercised, prior to the expiration of the Investigation Period (defined in paragraph 23 hereof)) and, therefore, without prejudice to any right of such party to request the Court to compel the DIP Lenders to reapply monies originally paid in respect of such Roll Up Debt and to invalidate the DIP Lien, superpriority claim, and power of attorney and other remedies provided for herein and in the DIP Loan Agreement to secure and provide for priority in payment and collection of such Roll Up Debt, the intention of this Interim Order being that if the Court determines that all or any portion of the Roll Up Debt is not, in fact secured except as provided in the DIP Facility and this Interim Order, the liens, claims, power of attorney, and other rights provided for in this Interim Order and the DIP Loan Agreement will not apply or have ever applied to such amount of the DIP Loan and any payments thereof (and the DIP Lenders and Agent acknowledge that the liens, claims and other rights granted in this Interim Order and in the DIP Loan Agreement and other DIP Facility documents are subject in all respects to the foregoing and disgorgement). Without limiting the introductory clause of this subparagraph (i), the following provisions of the DIP Loan Agreement are expressly subject to this subparagraph:   sections 5.19(b)-(c), 6.2, 6.3 and 8.1(a), (d), (j), 8.1(cc).

(ii) **Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents,** payment or payment in full of the Roll UP Debt may be satisfied by treatment of such Debt under section 1129(b) of the Bankruptcy Code.  Roll Up Debt is not subject to the requirement of payment in full under section 1129(a)(9) of the Bankruptcy Code.  Without

limiting introductory clause to this subparagraph (ii), section 6.20 of the DIP Loan Agreement is expressly subject to this subparagraph (ii).

17.    **Automatic Perfection of Liens.**

(a)    The DIP Liens and Adequate Protection Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Interim Order.  DIP Agent and Prepetition Agent shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the DIP Collateral) in order to validate the perfection of any of the DIP Liens or Adequate Protection Liens.  If DIP Agent or Prepetition Agent shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens or Adequate Protection Liens, Debtors and their officers are directed to execute any documents or instruments as DIP Agent or Prepetition Agent shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. DIP Agent and Prepetition Agent may, in its discretion, file a certified copy of this Interim Order in any filing office in each jurisdiction in which a Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Interim Order for filing and recording.

18.    **Events of Default; Remedies.**

(a)    Upon or after a violation of this Interim Order or the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement as modified by this Interim Order, DIP Secured Parties shall have no further obligation to provide financing under the DIP Loan Documents or this Interim Order and DIP Agent shall be fully authorized, in its sole discretion,

to, without providing any prior notice thereof, accelerate the Postpetition Debt under the DIP Loan Documents, charge interest at the default rate set forth in the DIP Loan Agreement, require cash collateralization of obligations relating to any letters of credit issued pursuant to the DIP Loan Agreement, hold any balances in excess of $750,000 (in the aggregate) in any accounts of any Debtor, and terminate further DIP Credit Extensions under the DIP Facility as provided in the DIP Loan Agreement; and, upon seven (7) calendar days' prior notice ("Notice Period") in writing, with a contemporaneous copy by e-mail, to counsel for Debtors, counsel for any Committee, and the U.S. Trustee, DIP Agent and Prepetition Agent may enforce all liens with respect to the DIP Collateral, to effect offsets of bank account balances and to take all other actions and exercise all other remedies under the DIP Loan Documents, Prepetition Loan Documents, and applicable law that may be necessary or deemed appropriate by either DIP Agent or Prepetition Agent to collect any of the Postpetition Debt or Prepetition Debt, to proceed against or realize upon all or any portion of the DIP Collateral as if these Chapter 11 Cases or any superseding chapter 7 cases were not pending and otherwise to enforce the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order.

(b)     In the event any Debtor, Committee and/or the U.S. Trustee have not obtained an order from this Court to the contrary before the end of such Notice Period, the automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, shall be deemed lifted, vacated, modified and/or terminated without the necessity of any further action by the Court.

(c)     The Debtor, any Committee, and the U.S. Trustee shall have the right to request an emergency hearing on the issue of whether a violation of this Interim Order and/or an Event of Default has occurred and is continuing.  If the Court's schedule does not permit an emergency

hearing to be conducted prior to the expiration of the Notice Period, the Court may order the Notice Period extended until such hearing may be held.  If any hearing is held before the end of the Notice Period regarding the exercise of any rights or remedies by any DIP Secured Party or any Prepetition Secured Party, the only issue at such hearing that may be raised by any party in opposition to the exercise of any such rights or remedies shall be whether, in fact, a violation of this Interim Order and/or an Event of Default has occurred and is continuing.  The party requesting the hearing shall have the burden of proof, and Debtors shall be deemed to have waived their right to (i) use, or seek authority from the Court to use, any Collateral or the proceeds thereof or (ii) seek injunctive relief, other than injunctive relief limited to a determination of whether a violation of this Interim Order and/or an Event of Default has occurred.

(d)      The rights, remedies, powers and privileges conferred upon DIP Secured Parties and Prepetition Secured Parties pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Loan Documents and the Prepetition Loan Documents.

19.      **Modification of Automatic Stay.**  The automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, are hereby lifted, vacated, modified, and/or terminated as to DIP Agent and the other DIP Secured Parties to the extent necessary to implement the provisions of this Interim Order and the DIP Loan Documents, thereby permitting all DIP Secured Parties and Prepetition Secured Parties to receive from Debtors all cash, checks, or other collections or proceeds from the DIP Collateral or proceeds of the DIP Credit Extensions for application to the Postpetition Debt and the Prepetition Debt, as applicable and as provided in the DIP Loan Documents, to file or record any UCC-1 financing statements

mortgages, deeds of trust, security deeds, and other instruments and documents evidencing or validating the perfection of the DIP Liens and to enforce the DIP Liens upon default subject to the prior notice provisions of this Interim Order.

20.    **Monitoring of Collateral.**   Without limiting the rights of access and information afforded DIP Secured Parties under the DIP Loan Agreement, Debtors shall permit:

(a)    representatives of DIP Agent to visit and have reasonable access, upon one business day's prior notice, to the business offices, facilities, premises, and books and records of Debtors during normal business hours to inspect any Collateral and to verify or to obtain supporting details concerning the financial information to be provided to DIP Agent hereunder or under any of the DIP Loan Documents.

(b)    DIP Agent shall be authorized to retain appraisers, consultants and financial advisors, at Debtors' expense, which appraisers, consultants and advisors shall be afforded reasonable access to the DIP Collateral and Debtors' business offices, facilities, and premises, during normal business hours, for purposes of monitoring the business of Debtors, monitoring and verifying Debtors' compliance with the terms of the DIP Loan Documents and this Interim Order, and appraising all or any part of the DIP Collateral.   Debtor shall, *inter alia*, assist, cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request under the circumstances.

21.    **Subsequent Reversal or Modification.**   Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)      the validity of any obligation, indebtedness, liability, DIP Lien, or Adequate Protection Lien granted or incurred by Debtors to any DIP Secured Party or any Prepetition Secured Party prior to the effective date of such stay, modification, or vacation; or

(b)      the validity, enforceability, or priority of any DIP Lien, Adequate Protection Lien, priority, or right authorized or created under the original provisions of this Interim Order or pursuant to the DIP Loan Documents; or

(c)      the validity or enforceability of any action taken pursuant to this Interim Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any post-petition indebtedness, obligation, or liability incurred by Debtors to DIP Secured Parties under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim Order, and DIP Secured Parties shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.   All DIP Credit Extensions under the DIP Loan Documents are made in reliance upon this Interim Order, and, therefore, the indebtedness resulting from such DIP Credit Extensions prior to the effective date of any stay, modification, or vacation of this Interim Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and Superpriority Claim granted to DIP Agent and/or any other DIP Secured Party under this Interim Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Cases, or any superseding case, of Debtors.

22.      **No Deemed Control.**  By consenting to this Interim Order, making DIP Credit Extensions or administering the financing relationship with Debtors pursuant to the DIP Loan Documents, no DIP Secured Party shall be deemed to be in control of any Debtor or its

operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of Debtors.

23.    **Challenges to Liens and Claims.**

(a)    Debtors have represented, acknowledged, stipulated, and agreed, for themselves and not their estates, subject to this paragraph, that all liens and security interests of Prepetition Agent and the other Prepetition Secured Parties in the Postpetition Collateral are legal, valid, binding, enforceable, properly perfected, and non-avoidable, that the Prepetition Debt is allowable as a fully secured claim against Debtors, and that the Prepetition Debt is valid, legal, binding, and enforceable and not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law or otherwise.  Based on the foregoing, as of the date of entry of this Interim Order, Debtors, for themselves but not their estates, subject to this paragraph 23, waive and release any and all claims or causes of action against Prepetition Secured Parties and their respective officers, directors, employees, attorneys, agents or representatives relating to or arising in connection with the Prepetition Loan Documents.

(b)    In consideration of DIP Secured Parties' agreement to provide DIP Credit Extensions pursuant to the DIP Loan Documents, each Debtor has waived and shall be barred from (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset or subordinate any of the Prepetition Debt or any liens or security interests of any Prepetition Secured Party in the Postpetition Collateral and (ii) from asserting any other claims

or causes of action against any Prepetition Secured Party including, without limitation, claims for

lender liability or pursuant to sections 105, 510, 544, 547, 548, 549 or 550 of the Bankruptcy

Code.   Notwithstanding the foregoing, any party-in-interest (other than Debtors) or any

Committee with the requisite standing to do so, shall be permitted to investigate (subject to the

limitation set forth in subparagraph (a) of paragraph 11) and challenge the validity,

enforceability, priority, perfection, or amount of the Prepetition Debt or Prepetition Agent's liens

on the Prepetition Collateral in respect thereof, or otherwise assert any claims or causes of action

against any Prepetition Secured Party or on behalf of Debtors' estates, which adversary

proceeding (or motion for authority to commence such adversary proceeding) shall be

commenced no later than the earlier of (i) sixty (60) days following the date of entry of the Final

Order, if a Committee is appointed and (ii) seventy-five (75) days following the date of entry of

the Final Order, if a Committee is not appointed (the "Investigation Period" and each such

action, a "Challenge Action").   If no Challenge Action is filed during the Investigation Period,

(1) the Prepetition Debt shall constitute an allowed claim of Prepetition Agent, for the benefit of

Prepetition Secured Parties (without the necessity of the filing of proofs of claim by Prepetition

Agent or any other Prepetition Secured Party), not subject to subordination and otherwise

unavoidable, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (2)

Prepetition Agent's liens on the DIP Collateral shall be deemed legal, valid, binding, perfected,

not subject to defense, counterclaim, offset of any kind, subordination and otherwise

unavoidable, and (3) Prepetition Agent, the other Prepetition Secured Parties, the Prepetition

Debt, the Prepetition Loan Documents, and the Prepetition Agent's liens on the DIP Collateral

shall not be subject to any other or further challenge by any party-in-interest seeking to exercise

the rights of Debtors' estates, including without limitation, any successor thereto, with the

exception of any actions taken by such parties after the entry of a Final Order.  The filing of any Challenge Action after the conclusion of the Investigation Period, by any Committee or any party-in-interest, shall constitute an immediate Event of Default under this Interim Order and the DIP Loan Documents.

24.     **Successors and Assigns.**  The provisions of this Interim Order shall be binding upon all parties-in-interest in these Chapter 11 Cases, including, without limitation, DIP Secured Parties, Debtors and their respective successors and assigns, and shall inure to the benefit of DIP Secured Parties, Debtors and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  In no event shall any DIP Secured Party have any obligation to make DIP Credit Extensions to any chapter 7 or chapter 11 trustee appointed or elected for the estate of any Debtor.

25.     **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which Debtors are and will become parties shall constitute legal, valid and binding obligations of Debtors, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to DIP Secured Parties by Debtors.  The rights, remedies, powers, privileges, liens and priorities of DIP Secured Parties and Prepetition Secured Parties provided for in this Interim Order and in any other DIP Loan Document shall not be modified, altered or impaired in any way by any subsequent order (including a confirmation order or an order that extends any time period set forth herein) or by any plan of reorganization or liquidation in these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until (a) with respect to DIP Secured Parties, the Postpetition Debt has been

indefeasibly paid, in full, in cash and the DIP Loan Documents are terminated in accordance therewith; and (b) with respect to the Prepetition Secured Parties, the Prepetition Debt has been indefeasibly paid, in full, in cash and the Prepetition Loan Documents are terminated in accordance therewith.

26.   **Priority of Terms; Budget.**

(a)   To the extent of any conflict between or among the express terms or provisions of any of the Prepetition Loan Documents, the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim Order shall govern and control.

(b)   For the avoidance of doubt, notwithstanding anything to the contrary in this Interim Order, any of the DIP Loan Documents, or any other order entered by this Court or any other court of competent jurisdiction at any time and from time to time, Debtors shall not make any disbursements other than those set forth in the Budget. Without limiting the foregoing, notwithstanding any relief granted in any other order entered by the Court, but subject to the terms and conditions of this Interim Order, Debtors shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed by and expressly included in this Interim Order, the DIP Loan Documents, and the Budget.

27.   **No Waiver.**   This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that DIP Secured Parties or Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

28.   **Sale.**   Debtors shall not sell the stock of any of their subsidiaries or all or substantially all of the assets of any Debtor under section 363 of the Bankruptcy Code or otherwise unless, in any such event, DIP Agent (a) expressly consents in writing (e-mail from

counsel being sufficient) to any such transaction; (b) the proceeds thereof are sufficient to indefeasibly pay all Postpetition Debt and Prepetition Debt and Postpetition Debt in full, in cash, and the DIP Loan Documents and the Prepetition Loan Documents are terminated in accordance therewith; and (c) the Investigation Period shall have lapsed and without the filing of an adversary proceeding as required under paragraph 23 hereof.

29.     **Final Hearing**.  **The Final Hearing shall be held in this Court at 3:30 p.m. (Eastern time), on January 29, 2015** (as the same may be adjourned or continued by the Court). If no objection to the DIP Financing Motion or this Interim Order is timely filed and asserted at the Final Hearing, then this Interim Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make at the Final Hearing and that are acceptable to DIP Secured Parties.  If any or all of the provisions of this Interim Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of this paragraph, any Postpetition Debt incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and DIP Secured Parties shall be entitled to all of the protections afforded under section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the liens granted to DIP Agent, for the benefit of Secured Parties, in the DIP Collateral and superiority claim status granted herein and pursuant to the DIP Loan Documents with respect to all such Postpetition Debt.

30.     **Adequate Notice; Notice of Final Hearing**.   The notice given by Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required.  Promptly after the entry of this Interim Order,

Debtors shall mail, by first class mail, a copy of this Interim Order and a notice of the Final

Hearing, to the Notice Parties and shall file a certificate of service regarding same with the Clerk

of the Court.  Such service shall constitute good and sufficient notice of the Final Hearing.

31.    **Objection Deadline.**  Any objection to the relief sought at the Final Hearing shall

be made in writing setting forth with particularity all facts relied upon and all grounds therefor,

and filed with the Court (with a copy to Chambers) **on or before 4:00 p.m. (Eastern time) on**

**January 22, 2015** (the "Objection Deadline"), and concurrently served so as to be <u>actually

received</u> by the Objection Deadline by: (i) counsel for Debtors Lowenstein Sandler LLP, 65

Livingston Avenue, Roseland, New Jersey 07068, Attn: Kenneth A. Rosen, Mary E. Seymour;

(ii) counsel for the DIP Agent, Katten Muchin Rosenman LLP, 525 West Monroe Street,

Chicago, Illinois 60661, Attn:  Kenneth J. Ottaviano; (iii) counsel for Capital One, National

Association, as a DIP Lender, McCarter & English LLP, Four Gateway Center, 100 Mulberry

St., Newark, NJ 07102, Attn: Joseph Lubertazzi, Jr.; and the U.S. Trustee, 410 Varick Street,

New York, New York, Attn: Susan Golden, Paul Schwartzberg, with a copy to the Court's

chambers.  Unless an objecting party or its counsel appears at the Final Hearing to assert the

basis for such objection before the Court, such objection shall be deemed to have been waived

and abandoned by such objecting party.

32.    **Entry of Order.**   This Interim Order shall take effect immediately upon

execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3),

6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this

Interim Order on the Court's docket in these Chapter 11 Cases.

Dated:  White Plains, New York
        December 23, 2014      /s/ Robert D. Drain
                                          **UNITED STATES BANKRUPTCY JUDGE**