| | |
|---|---|
| KLESTADT WINTERS JURELLER<br>SOUTHARD & STEVENS, LLP<br>Tracy L. Klestadt<br>Fred Stevens<br>Sean C. Southard<br>Joseph C. Corneau<br>570 Seventh Avenue, 17th Floor<br>New York, New York 10018<br>(212) 972-3000 | <u>Hearing Date</u>: February 17, 2015<br><u>Hearing Time</u>: 2:00 p.m. |

Proposed Attorneys for the Official
Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Binder & Binder – The National<br>Social Security Disability Advocates (NY),<br>LLC, *et al*. | :<br>:<br>: | Case No. 14-23728(RDD)<br><br>(Jointly Administered) |
| | : | |
| Debtors. | : | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) APPROVING ALTERNATIVE POST-PETITION
SENIOR SECURED FINANCING ON A FIRST-PRIORITY PRIMING BASIS,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING
<u>ADEQUATE PROTECTION, AND (IV) MODIFYING THE AUTOMATIC STAY</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>"), by its proposed attorneys, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this Statement in Support (the "<u>Committee Statement</u>") of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Post-Petition Senior Secured Financing on a First Priority Priming Basis, (II) Authorizing Use of Cash Collateral, (III) Granting Adequate Protection, and (IV) Modifying the Automatic Stay (the "<u>Alternative Financing Motion</u>") [Docket No 143]. In support of the Committee Statement, the Committee respectfully represents as follows:

1

**Preliminary Statement**

Since its formation, the Committee has been highly concerned with the Original Financing Agreement (defined below). The terms of the Original Financing Agreement are unnecessarily onerous and seem intentionally designed to result in the Debtors' premature liquidation all so the Existing Secured Lenders (defined below) can get repaid faster than they otherwise should. For very modest advances of new capital, the Existing Secured Lenders seek to roll-up a prepetition facility that is more than seven times the amount of the post-petition financing, and impose repayment terms that all but ensure the destruction of the Debtors as a going concern. The Existing Secured Lenders have remained completely inflexible during the short pendency of these cases and appear unwilling to address the concerns of this Court with the Original Financing Agreement, negotiate the terms of the Original Financing Agreement that have already proved unworkable, or respond to the Committee's objection to the Original Financing Agreement. As a result of the Existing Secured Lenders' inflexible behavior, the Committee urged the Debtors to seek out and consider alternatives. At this time, there appears to be no alternative to approval of the Alternative Financing Motion that could even offer a chance of the Debtors' survival.

Through this Committee Statement, the Committee now intends to state clear support for the Debtors' pursuit of more flexible and appropriate financing offered by Stellus (defined below) as described in the Alternative Financing Motion and hereby joins in the request that this Court approve the same. In addition, the Committee requests that the Court amend, modify, or otherwise vacate so much of the Interim Financing Orders (as defined below) as may be necessary to limit the Existing Secured Lenders' ability to enforce covenants and remedies

provided by the Original Financing Agreement as may be necessary to permit the Debtors to effectively reorganize.

### Background

1.      On December 18, 2014 (the "Petition Date"), each of the Debtors[1] filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      No trustee or examiner has been appointed herein.

3.      The Office of the United States Trustee ("U.S. Trustee") appointed the Committee on January 8, 2015 [Docket No. 80]. The Committee initially consisted of: (i) Stellus Capital Investment Corporation ("Stellus"), (ii) United Service Workers Union, Local 455 IUJAT & Related Funds, (iii) T&G Industries, Inc., (iv) WB Mason Co., and (v) Teaktronics, Inc.  On January 30,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) Binder & Binder - The National Social Security Disability Advocates (NY), LLC (1450); (2) SSDI Holdings, Inc. (3038); (3) Binder & Binder – The National Social Security Disability Advocates LLC (8580); (4) Binder & Binder - The National Social Security Disability Advocates (AZ), LLC (5887); (5) Binder & Binder - The National Social Security Disability Advocates (CA), LLC (1456); (6) Binder & Binder - The National Social Security Disability Advocates (CO), LLC (0945); (7) Binder & Binder - The National Social Security Disability Advocates (CT), LLC (0206); (8) Binder & Binder - The National Social Security Disability Advocates (FL), LLC (1455); (9) Binder & Binder - The National Social Security Disability Advocates (GA), LLC (4768); (10) Binder & Binder - The National Social Security Disability Advocates (IL), LLC (1457); (11) Binder & Binder - The National Social Security Disability Advocates (MD), LLC (3760); (12) Binder & Binder - The National Social Security Disability Advocates (MO), LLC (2108); (13) Binder & Binder - The National Social Security Disability Advocates (NJ), LLC (1454); (14) Binder & Binder - The National Social Security Disability Advocates (NC), LLC (1460); (15) Binder & Binder - The National Social Security Disability Advocates (OH), LLC (7827); (16) Binder & Binder - The National Social Security Disability Advocates (PA), LLC (1453); (17) Binder & Binder - The National Social Security Disability Advocates (TX), LLC (1458); (18) Binder & Binder - The National Social Security Disability Advocates VA, LLC (7875); (19) Binder & Binder - The National Social Security Disability Advocates (WA), LLC (0225); (20) Binder & Binder - The National Social Security Disability Advocates (LA), LLC (8426); (21) Binder & Binder - The National Social Security Disability Advocates (MI), LLC (8762); (22) Binder & Binder - The National Social Security Disability Advocates (DC), LLC (5265); (23) The Rep for Vets LLC (6421); (24) National Veterans Disability Advocates LLC (dba The Rep for Vets LLC) (7468); and (25) The Social Security Express Ltd. (4960).

2015, the U.S. Trustee reconstituted the Committee, removing Stellus from the Committee [Docket No. 99].

4. On the Petition Date, the Debtors filed the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Post-Petition Senior Secured Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Adequate Protection, and (IV) Modifying the Automatic Stay (the "Original Financing Motion") [Docket No. 14].

5. On December 22, 2014, the Bankruptcy Court held a hearing (the "Interim Hearing") to consider approval of the Financing Motion on an interim basis. Supplemental hearings concerning the Financing Motion were held on December 23, 2014 and December 24, 2014 (by telephone).

6. On December 24, 2014, the Court entered its Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Granting Liens, Security Interests and Superpriority Status; (III) Authorizing Use of Cash Collateral; (IV) Affording Adequate Protection; (V) Scheduling a Final Hearing; and (VI) Modifying the Automatic Stay (the "Interim Financing Order") [Docket No. 50]. The Interim Financing Order, *inter alia*, authorized the Debtors to execute the Post-Petition Revolving Credit and Security Agreement (the "Original Financing Agreement") among the Debtors, as Borrowers, U.S. Bank National Association, as administrative agent (the "Agent") for the lenders from time to time parties thereto (the "Existing Secured Lenders").

7. On January 22, 2015, the Committee filed its Objection to the Original Financing Motion (the "Committee Objection") [Docket No. 93].

8. On February 3, 2015, the Court entered an Order (A) Extending and Amending the Interim Financing Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II)

4

Granting Liens, Security Interests and Superpriority Status, (III) Authorizing Use of Cash Collateral, (IV) Affording Adequate Protection; (V) Scheduling a Final Hearing and (VI Modifying the Automatic Stay; and (B) Approving Amendment to the DIP Loan Agreement (together with the Interim Financing Order, the "Interim Financing Orders").

9. A hearing on final approval of the Original Financing Agreement was first scheduled for January 29, 2015. That hearing was initially changed to serve as a status conference before the Court. The final hearing was then adjourned to February 9, 2015 and again to February 17, 2015.

10. On February 10, 2015, the Debtors filed the Alternative Financing Motion. The Alternative Financing Motion seeks approval of financing (the "Alternative Financing") to be provided by Stellus on a priming basis and on terms that will permit the Debtors to fully explore their options to maximize the value of the Debtors' estates for the benefit of all creditors.

**ARGUMENT**

**A.    The Committee Supports the Alternative DIP Financing.**

11. The Committee supports the Alternative Financing and requests that the Court grant the Alternative Financing Motion.

12. Unlike the terms of the Original Financing Agreement with the Existing Secured Lenders, the Alternative Financing offered by Stellus will afford the Debtors the time and resources needed to fully and completely evaluate their restructuring options in accordance with their fiduciary duties and maximize value for all stakeholders.

13. As this Court noted in consideration of the Original Financing Agreement and prior to entry of the Interim Financing Orders, the controls and restrictions sought by the Existing Secured Lenders amounted to overreaching. Indeed, this Court took great pains to review and limit some of

the most onerous provisions contemplated by the Original Financing Agreement, presumably recognizing that the Debtors lacked leverage in negotiations with the Existing Secured Lenders and that the Committee had not been organized or the views of unsecured creditors adequately considered during the infancy of these cases.

14. Since that time and notwithstanding this Court's clear warnings to act reasonably in offering terms for what can only be described as a "protective DIP" and to otherwise recognize the practical risks of collateral recovery, the Existing Secured Lenders have refused to budge and instead noticed defaults under covenants that the Committee believes were intentionally designed as trip wires. For example, the Committee is informed that the Existing Secured Lenders demanded payment of fees and costs from the Debtors knowing that such payments were in excess of the budget they approved and then promptly called a default based upon the payments made pursuant to their demands. Perhaps most importantly, the Existing Secured Lenders refuse to acknowledge the demonstrated change in circumstances in the timing of payment of fees to the Debtors by the U.S. Government, and have aggressively noticed defaults due to the Debtors' recent misses on the tight covenants imposed in relation to forecasting of cash receipts. These actions and the attitude of the Existing Secured Lenders have created an untenable situation.

15. The Alternative Financing offers a number of necessary and important benefits not available in the Original Financing Agreement including, but not limited to: (i) an increase from a $3 to $6 million facility; (ii) an ability for the Debtors to advertise, continue to take on new clients, and remain a viable going concern; (iii) the retention of the flexibility afforded by the Bankruptcy Code in restructuring an appropriately timed repayment of the Existing Secured Lenders' $23 million pre-petition facility; (iv) a more realistic budget that avoids existing defaults and inevitable future

defaults under the Original Financing Agreement; and (v) double the time to propose and seek confirmation of a plan.

16.     The Committee asserts that the flexibility and resources made available under the Alternative Financing is of substantial benefit and is in the best interests of the Debtors, their creditors and their estates. Accordingly, the Committee therefore respectfully submits that the Alternative Financing Motion should be granted.

**B.     The Flexibility Obtained by the Alternative Financing Must be Allowed Full Effect Without Interference from the Existing Secured Lenders.**

17.     Though perhaps assumed by the Alternative Financing Motion, the Committee believes that the record must be made perfectly clear that the Existing Secured Lenders may not exercise any remedy under the Interim Financing Orders that would jeopardize the benefits obtained by the Alternative Financing.

18.     As the Court knows, and as more fully described in the Committee Objection, the Original Financing Agreement imposes severe controls in the form of affirmative and negative covenants, including, among other things, a highly aggressive repayment schedule (that is now known to be impracticable) and deadlines to file and obtain confirmation of a plan of liquidation within six months and eight months from the Petition Date, respectively.

19.     Moreover and without modification, the tripping of these covenants (and others) may result in events of default that the Existing Secured Lenders may contend permit the exercise of remedies under the Original Financing Agreement. The danger to the Debtors' estates in such a possibility is heightened because certain remedies may be exercised without any notice, while others offer a short seven (7) day period in which the Debtors must seek emergency relief

from the Court in a proceeding in which the Debtors bear the burden of proof that a default did not occur rather than the Existing Secured Lenders having to prove that one did.

20. The Committee is concerned that the substantial benefits and flexibility obtained by the Alternative Financing could be negated or at least subjected to substantial risk if the Existing Secured Lenders maintain any such control through the covenants and remedies granted preliminarily by the Interim Financing Orders. Accordingly, the Committee respectfully requests that the Court clearly and expressly amend, modify, supersede and/or vacate so much of the Interim Financing Orders as may be necessary to ensure that the intent of the Alternative Financing Agreement is fully realized.

21. This Court has substantial authority to prevent the possibility of continued overreach and interference by the Existing Secured Lenders. Section 105(a) of the Bankruptcy Code gives the court equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In re Dairy Mart Convenience Stores, Inc., 351 F.3d 86, 91-92 (2d Cir. 2003); see also In re Greenwich Sentry, L.P., 534 F. Appx. 77, 80 (2d Cir. 2013); In re Pan Am Corp., 162 B.R. 667, 671 (S.D.N.Y. 1993); see also Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

22. The Court may also modify its own orders. Under section 105(a) of the Bankruptcy Code, a bankruptcy court has the equitable power to correct, modify or vacate its own orders. In re Earth Waste Sys., Inc., No. 98-11675, 2002 WL 34440061, at *4 (Bankr. D. Vt. Mar. 27, 2002).

23. In addition, as the Court observed at the status conference on January 29, 2015, the Interim Financing Orders are only interim orders. It is implicit that they can be rolled back pursuant to the Court's inherent powers. See, e.g., In re Telecontinuity, No. 10-0694, 2011 WL 806097, *2 (Bankr. D. Md. 2011) (where interim order plainly stated it was an interim order, and no final order

8

was entered, court may revise terms of interim order and decline to apply law of the case to the interim order in its discretion).

24. Vacating or modifying the Interim Financing Orders is appropriate under the circumstances. If the Alternative Financing Motion is granted, the Debtors intend to immediately repay the "Incremental Advance," *i.e.*, the post-petition advances made by the Exiting Secured Lenders from the proceeds of the Alternative Financing. Moreover, according to the Alternative Financing Motion, the Debtors propose to provide substantial adequate protection to the Existing Secured Lenders in the form of adequate protection liens and claims, and more significantly, post-petition interest and regular installment payments of $500,000 each beginning June 1, 2015.

25. The sum effect of these provisions is that the Existing Secured Lenders will be returned to at least the same position they were prior to the Petition Date. As a result, and because the Existing Secured Lenders will not be making loans in the future, the Interim Financing Orders and the Original Financing Agreement is a nullity and there is no reason why they should remain enforceable.

## Conclusion

The Alternative Financing provides the Debtors with needed additional financing on terms that provide time and flexibility for the Debtors and the Committee to fully assess their options to maximize value of the Debtors' estates. Accordingly, the Committee supports the Alternative Financing Motion and requests that the Court grant it. In addition, for the reasons stated, the Committee requests that the Court either vacate the Interim Financing Orders in their entirety or modify them such that the onerous provisions of the Original Financing Agreement do not further interfere with or vitiate the benefits of the Alternative Financing.

**WHEREFORE**, the Committee respectfully requests that the Court (a) approve the Alternative DIP Financing and (b) vacate the Interim Financing Orders or otherwise modify the Interim Financing Orders to limit the exercise of remedies of the Existing Secured Lenders under the Original Financing Agreement.

Dated: New York, New York
       February 13, 2015

                                    KLESTADT WINTERS JURELLER
                                      SOUTHARD & STEVENS, LLP

                                By:    */s/Tracy L. Klestadt*
                                          Tracy L. Klestadt
                                          Fred Stevens
                                          Sean C. Southard
                                          Joseph C. Corneau
                                570 Seventh Avenue, 17th Floor
                                New York, NY 10018-1603
                                (212) 972-3000

                                *Proposed Attorneys for the Official*
                                *Committee of Unsecured Creditors*